IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| MICHAEL POSTON and JOANNA POSTON, individually and as guardian of Michael Poston, | CV 23-28-M-DWM |
| Plaintiffs, | |
| vs. | ORDER |
| VELOX TRANSPORT SOLUTIONS, LLC, JULIO SANTOS, CES HOSPITALITY, ALMO DISTRIBUTING, and DOES 1-15, | |
| Defendants, | |
| ALMO DISTRIBUTING PENNSYLVANIA, INC., | |
| Third-Party Plaintiff, | |
| vs. | |
| UBER FREIGHT LLC, | |
| Third-Party Defendant. | |

## INTRODUCTION

Michael Poston's and Joanna Poston's, individually and as guardian of Michael Poston, ("Plaintiffs") initial Complaint and Demand for Jury Trial includes six claims related to a motor-vehicle collision that occurred on January 21, 2022, against Defendants Velox Transport Solutions, LLC ("Velox"), Julio Santos, CES Hospitality, Almo Distributing Pennsylvania, Inc. ("Almo"), and Does 1–5. Velox is the motor carrier that owned and operated the semi-truck and trailer involved in the collision. Santos, a Velox employee, was driving the semi-truck and trailer at the time of the collision. CES Hospitality and Almo contracted to dropship the cargo being transported by Velox. Plaintiffs are suing for damages allegedly incurred because of the highway collision. Plaintiffs also claim that CES Hospitality and Almo negligently selected Velox to ship CES Hospitality's cargo. (*See* Doc. 1.)

As alleged in the Complaint, on January 21, 2022, Poston was injured when he collided with a semi-truck operated by Santos and owned by Velox on Montana Highway 2 in Flathead County. (Doc. 1.) Poston alleges Santos made an improper U-turn that caused Poston's vehicle to collide with the semi-truck and become lodged under its trailer. (*Id.* at ¶ 11.) Poston suffered severe skull fractures, brain trauma, and other injuries. (*Id.* at ¶ 12.) Santos, the driver of the truck, plead

2

guilty to Careless Driving Involving Death or Serious Bodily Injury in violation of Montana Code Annotated § 61-8-302. (*Id.* at ¶ 20.)

Almo denies liability for the collision. (Doc. 3.) In addition to denying negligence, Defendant and third-party Plaintiff Almo filed a third-party complaint against Uber Freight LLC ("Uber") for negligence, contribution, and/or indemnity. (Doc. 3.) Almo asserts that Uber failed to conduct a proper investigation into Velox's hiring practices, training practices, and background and safety records. (*Id.* at ¶ 8.) Almo seeks judgment against Uber making Uber either directly liable for any damages assessed against Almo or liable for contribution and/or indemnity. (*Id.* at ¶ 9.)

Uber now moves to dismiss Almo's Third-Party Complaint under Federal Rule of Civil Procedure 12(b)(6). (Doc. 12.) Uber argues dismissal is warranted because Almo's claims are preempted under the Federal Aviation Administration Authorization Act (the "Act")[1] and that Almo has failed to state sufficient facts and law supporting a negligence claim. Almo responds that negligence claims are either not preempted or fall under an exception within the Act and that they have

---

[1] Plaintiffs are not alleging violations of the Federal Motor Carrier Safety Act, which would fall directly within the jurisdiction of the U.S. Department of Transportation and require administrative proceedings. *See Firebaugh v. United States*, 2013 WL 4048977, at *2 (D. Nev. Aug. 9, 2013) (citing 49 C.F.R. § 386.12).

pled sufficient facts and law to support their claims.  Because Almo has the better

argument, Uber's motion is denied.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Dismissal is appropriate "where there is no cognizable legal theory or an absence

of sufficient facts alleged to support a cognizable legal theory." *L.A. Lakers, Inc.*

*v. Fed. Ins. Co.*, 869 F.3d 795, 800 (9th Cir. 2017) (quotation marks omitted).

## ANALYSIS

Uber argues that two independent reasons entitle them to be dismissed from

this suit.  First, Uber argues that state law tort claims are preempted by the Act

given Uber's position as a freight broker and any negligence claim relates to

Uber's services as a broker.  Second, Uber argues that Almo failed to meet the

pleading standard under Rule 8(a)(2) by not alleging facts showing Uber's conduct

was negligent.  Almo disagrees arguing that highway regulations fall under the

traditional state police power and, even though related to a broker's services, they

4

are an exception to the Act and not preempted.  Almo also asserts it has presented

sufficient facts and appropriately stated a claim pursuant to Rule 8(a)(2).  Almo

has the better argument because state tort laws fall under the safety exception of

the Act and are not preempted.  Almo is also correct that the facts presented are

sufficient to meet Rule 8(a)(2) standards.  Therefore, Uber's motion to dismiss is

denied.

## I.    The Act

In 1994, Congress passed the Act to deregulate the trucking industry at the

state level.  Congress was concerned that state regulation "impeded the free flow of

trade, traffic, and transportation of interstate commerce" and "resolved to displace

*certain* aspects of the state regulatory process." *Dan's City Used Cars, Inc. v.*

*Pelkey*, 569 U.S. 251, 263 (2013) (internal quotation marks omitted).  The Act's

"driving concern was preventing states from replacing market forces with their

own, varied commands, like telling carriers they had to provide services not yet

offered in the marketplace." *Ca. Trucking Ass'n v. Su*, 903 F.3d 953, 961 (9th Cir.

2018) (internal citation and quotation marks omitted).  In pertinent part, the Act

states:

> Except as provided in paragraphs (2) and (3), a State, political
> subdivision of a State, or political authority of 2 or more States may not
> enact or enforce a law, regulation, or other provision having the force
> and effect of law related to a price, route, or service of any motor carrier
> (other than a carrier affiliated with a direct air carrier covered by section

5

> 41713(b)(4)) or any motor private carrier, broker, or freight forwarder
> with respect to the transportation of property.

49 U.S.C. § 14501(c)(1). The language of the Act expressly preempts any state

law "related to" services provided by brokers and motor carriers. The Act did

carve out a safety exception that allows states to create regulations designed to

protect the safety and welfare of its residents. *See* § 14501(c)(2). Accordingly, the

question is whether state negligence laws are included in the language found in

§ 1450(c)(1) and if so, does the safety exception in § 14501(c)(2) apply.

### A.    General Preemption

Pursuant to the Supremacy Clause of the U.S. Constitution, federal statues

may expressly preempt state laws. U.S. Const. art. VI, cl. 2. Courts consider the

surrounding statutory framework and Congress's stated purposes in enacting the

statute to identify the domain expressly preempted by that language. *Nat'l R.R.*

*Passenger Corp. v. Su*, 41 F.4th 1147, 1152 (9th Cir. 2022). Once a court has done

so, it asks whether the state law at issue falls within the scope of the preemption

clause. *Id.* at 1152–53.

The Act contains an express provision that preempts any state laws related to

the services of a broker and a motor carrier. *See* § 14501(c)(1). In general,

provisions using parallel or identical language within a statute should be

interpreted similarly. *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384

(1992). While Montana has not addressed the issue of preemption regarding

negligence claims against brokers, the Ninth Circuit has addressed negligence claims against motor carriers. *See Dilts v. Penske Logistics, LLC*, 769 F.3d 637, 646 (9th Cir. 2014). Since the preemption language in the Act addressing motor carriers is parallel to the language addressing brokers, any case law regarding preemption pursuant to the Act can be applied to both motor carriers and brokers. *Morales*, 504 U.S. at 384.

State laws are preempted only if they relate to the price, route, or service of a motor carrier or broker. A generally applicable state law is not "related to a price, route, or service of any motor carrier [or broker]" for purposes of preemption under the Act unless the state law "*binds* the carrier to a particular price, route or service." *Dilts*, 769 F.3d at 646. The court in *California Trucking Association, Inc. v. Bonta* stated that a state law "does not have such a binding or freezing effect unless it compels a result at the level of the motor carrier's relationship with its customers or consumers." 996 F.3d 644, 658 (9th Cir. 2021). Therefore, a determination must be made whether the state negligence laws at issue have a "binding or freezing effect" on Uber's relationship with its customers or consumers, *i.e.*, Velox and Almo.

The state laws at issue have binding or freezing effects on Uber's relationship with its customers which relates to Uber's services as a broker. Uber's customers are the motor carriers and shippers that use Uber's services, *i.e.*, its

7

online platform.  As discussed in *Dilts*, state enforcement actions that have an indirect effect on services can be preempted if there is a significant impact.  769 F.3d at 645.  Requiring Uber to fully investigate the hiring, training, and safety practices of any motor carrier could affect Uber's relationship with motor carriers and limit the amount of motor carriers willing to use the online platform.  Thus, if there is a decrease in available motor carriers using the online platform, Uber's ability to provide services to shippers would decrease.

Additionally, investigations into the hiring, safety, and training practices of motor carriers require time, resources, and disclosure of business information which affects the efficiency and daily practices of both brokers and motor carriers. Shippers and motor carriers that contract with Uber would be directly affected by more stringent investigations through increased requirements or potential delays in shipping.  *Dilts* clarifies that changes in costs or business operations may indirectly affect "services" enough to warrant preemption.  769 F.3d at 646–47.  Therefore, any state negligent hiring laws have a binding or freezing effect on Uber, relate to Uber's services as a broker, and fall within the scope of the preemption clause in the Act.

**B.    The Safety Exception to the Act**

Despite the broad preemption language in the Act, Congress did not intend to undermine state safety regulations and included § 14501(c)(2) as an exception to

8

preemption to protect the safety interests of the state.  The safety exception allows

states to enact or enforce laws that fall generally within the traditional power of the

state to address transportation, safety, welfare, or business rules that "do not

otherwise regulate prices, routes, or services." *Dilts*, 769 F.3d at 644.  Section

14501(c)(2) states:

> Paragraph (1) [of § 14501(c)] shall not restrict the safety regulatory
> authority of a State with respect to motor vehicles, the authority of a
> State to impose highway route controls or limitations based on the size
> or weight of the motor vehicle or the hazardous nature of the cargo, or
> the authority of a State to regulate motor carriers with regard to
> minimum amounts of financial responsibility relating to insurance
> requirements and self-insurance authorization.

The Supreme Court addressed this issue in *Rowe v. New Hampshire Motor*

*Transport Association* and held that not all state regulation is preempted.  552 U.S.

364, 375 (2008).  Specifically, regulation that broadly prohibits certain forms of

conduct that apply to all members of the public or that only affects "rates, routes,

or services in 'too tenuous, remote, or peripheral a manner'" is not preempted.  *Id.*

(citing *Morales*, 504 U.S. at 390); *see also Ward v. United Airlines, Inc.*, 986 F.3d

1234, 1243 (9th Cir. 2021) (explaining that safety regulations are examples of

generally applicable regulations, and they are not preempted "even if employers

must factor those provisions into their decisions about the prices that they set" or

"if they raise the overall cost of doing business").  The Ninth Circuit also

concluded that "the safety regulatory authority of a State" encompasses common-

9

law tort claims. *Miller,* 976 F.3d at 1026. *Miller* defines the exception and reasons

that "Congress intended to preserve the States' broad power over safety, a power

that includes the ability to regulate conduct not only through legislative and

administrative enactments, but also though common-law damages awards." *Id.* at

1020. The *Miller* court opined that if the preemption clause was narrowly

interpreted, much of state law would be beyond the reach of the exception and

would not be "consistent with both federalism concerns and the historic primacy of

state regulation of matters of health and safety." *Id.* at 1028 (quoting *Medtronic,*

*Inc. v. Lohr*, 518 U.S. 470, 485, (1996)).  Almo argues that even if their claims are

preempted, the safety exception applies.  Uber asserts the safety exception only

applies to motor vehicles and not brokers.  Because safety regulations and

standards for hiring, even if preempted, fall within the safety exception because

every industry has a duty to hire individuals that meet accepted standards and

safety regulations, Almo is correct.

Here, Uber seeks to escape Montana's regulatory authority.  Uber argues

that any claim related to a broker's services is expressly preempted under the Act

because subsection (c)(1) is unambiguous: state laws relating to the services of a

broker are preempted.  Following Uber's argument, the Act would preempt any

state tort claim against not only the broker, but also the motor carrier and any

entity providing services related to the transportation of property as defined by the

10

Act.  Thus, if Uber's argument is accepted, any citizen of Montana would be left without civil recourse in the event of a traffic collision with any interstate motor carrier, which was not the intent of Congress.  *See Miller*, 976 F.3d at 1020.

Furthermore, Uber relies upon irrelevant case law.  Uber cites other circuit decisions regarding application of the safety exception in the Act to common law tort claims, but since there is clear direction from the Ninth Circuit any conflicting circuit decisions are irrelevant.  (*See* Doc. 13.)  Given the Ninth Circuit's clear treatment of the safety exception to the Act and evidence of Congress's intent, Almo's negligence claims are not preempted by the Act because they involve general safety regulations that directly fall under state safety regulatory authority.

## II.   Pleading Standards

Uber's second argument is that Almo failed to state a negligence claim in its third-party complaint.  (Doc. 13 at 17.)  Almo argues that it presented sufficient factual matter to support a negligence claim.  (Doc. 3.)  Neither party addressed the Rule 14(a) standard that applies to third-party complaints.  The parties rely on the standards set forth in Rule 8(a)(2).  Almo presented sufficient factual matter to transfer full or partial liability to Uber for the underlying claims which satisfies Rule 14(a).  In addition to the satisfaction of Rule 14(a) requirements, Rule 8(a)(2)

is satisfied as Almo presented facts sufficient to plausibly plead that Uber may be negligent or liable to Almo.  Thus, Almo did not fail to state a claim.

## A.    Rule 14(a)

The appropriate standard when assessing whether Almo, as a third-party plaintiff, sufficiently stated a claim must include Rule 14(a) standards.  *See Fed. Trade Comm'n v. Am. Evoice, Ltd.*, 2016 WL 7165904, at *3 (D. Mont. Aug. 9, 2016); *Stewart v. Am. Intern. Oil & Gas Co.*, 845 F.2d 196 (9th Cir. 1988).  Rule 14(a) states that "a defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it."  Fed. R. Civ. P. 14.  Rule 14 requires that the third-party complaint be submitted within 14 days from service of the original answer.  *Id.*  Here, Almo alleged that Uber is liable for indemnity or contribution for all or part of the damages that may be assessed against Almo.  (Doc. 3 at ¶ 9.)  Almo also alleged that Uber may be directly liable to Plaintiffs for the alleged injuries.  (*Id.* at ¶ 9.)  Almo filed the Third-Party Complaint jointly with its Answer.  (*See* Doc. 3.)  Given that Almo timely filed its Third-Party Complaint on a party that may be liable to Almo for all or part of Plaintiffs' injuries, Rule 14(a) is satisfied.

## B.    Rule 8(a)(2)

Assuming the veracity of Almo's allegations in the Third-Party Complaint, Almo may be entitled to relief as there is sufficient evidence that Uber contracted

12

with Velox to ship cargo. Uber asserts that Almo needed to present facts

supporting all elements of a negligence claim, however the plausibility standard is

not a "probability requirement" and courts take a context-specific approach that

draws on "judicial experience and common sense." *Iqbal*, at 679. Under Rule

8(a)(2) and *Iqbal*, a pleading that states a claim for relief must allow the court to

reasonably infer that the defendant is liable for the alleged misconduct. *Id.* at 678.

Here, despite the brevity of Almo's Third-Party Complaint, there are

sufficient facts presented to infer that Uber may be liable to Almo and/or jointly

and severally liable to Plaintiffs for the underlying claim. Uber admits that it

contracted with Velox and provided services as a broker. (Doc. 3 at ¶¶ 6-7.)

Without the contract between Uber and Velox, Almo could not contract with Velox

to ship the cargo on January 21, 2022. Uber is within the chain of causation

because Plaintiffs' injuries stem from the results of the contract between Almo and

Velox, which Uber facilitated. Therefore, Almo sufficiently presented factual

matter that allows an inference to be made about Uber's alleged liability. Almo's

claims that Uber did not verify the qualifications or hiring practices of Velox are

also plausible given the existence of the contract between Uber and Velox. Due to

the presence of the contract between Uber and Velox, the Court could infer that

Uber has, or should have had, hiring practices to ensure that any federal or state

13

regulations relative to the industry are followed.  Because Almo pleaded plausible negligent hiring and negligence claims, the claims survive here.

**CONCLUSION**

Based on the foregoing, Uber's Motion to Dismiss (Doc. 12) is denied.

DATED this ___17___ day of November, 2023.

Donald W. Molloy, District Judge
United States District Court

14